# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

DAVON LYONS,

Petitioner,

v.

CALVIN JOHNSON,[1] et al.,

Respondents.

Case No. 2:19-cv-00966-APG-NJK

**Order**

Petitioner Davon Lyons filed a counseled second amended petition (Petition) for writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 22.  Lyons is not entitled to federal habeas relief for any of his claims, so I deny the Petition and a Certificate of Appealability.

## I.    BACKGROUND[2]

Several witnesses testified at the grand jury proceedings regarding Lyons.  Alan Adams testified that on February 11, 2013 in North Las Vegas, Nevada, he returned home and parked his car in his garage. ECF No. 38-3 at 7.  When he exited the car, there were two men in his garage "and one held a pistol, pointed it at [Adams'] head and they demanded that [Adams] let them into the house." *Id.*  Adams complied, and the men "move[d him] into [his] living room, [and] had [him] lie face down on the floor." *Id.* at 8.  Realizing that some golfers outside could likely see what was happening through a window, the men moved Adams to an adjoining room.

---

[1] The state corrections department's inmate locator page states that Lyons is incarcerated at High Desert State Prison.  Calvin Johnson is the current warden for that facility.  At the end of this order, I direct the clerk to substitute Calvin Johnson as a respondent in place of Warden Brian Williams. *See* Fed. R. Civ. P. 25(d).

[2] I make no credibility findings or other factual findings regarding the truth of this evidence from the state court.  My summary is merely a backdrop to my consideration of the issues.

*Id.*  The men ransacked Adams' home and garage, took various items, ordered Adams to continue to stay on the floor, and left. *Id.* at 8–9.

James Talley testified that on February 26, 2013, his wife Melissa Talley returned to their Las Vegas home around 10:00 p.m., and he heard her scream from their garage. *Id.* at 12.  James opened the door to the garage and saw "a guy standing next to [Melissa] pointing a gun at her." *Id.*  Another man entered the garage, pointed a gun at James, and told James "to be quiet, turn around, get back inside the house and get on the floor with [his] hands up and face down." *Id.* James and Melissa complied. *Id.*  The men ransacked the house and took various items before leaving. *Id.* at 13.

William Johnson testified that on February 28, 2013, he and his wife Teresa Johnson returned home from the dog park. *Id.* at 17.  They went inside and heard a knock, and when William opened the garage door, "[t]here were two gentlemen in the garage, each had a gun and they told [Johnson] to get in the house and get on the floor." *Id.* at 18.  The men entered the house and ordered Teresa to also get on the floor. *Id.*  William and Teresa complied. *Id.*  The men ransacked the house, took various items, cut the telephone lines, and broke Teresa's cell phone. *Id.*

Lyons was indicted on 31 charges arising out of the three robberies: one count of burglary, three counts of burglary while in possession of a deadly weapon, two counts of coercion, three counts of conspiracy to commit burglary, one count of conspiracy to commit coercion, three counts of conspiracy to commit first-degree kidnapping, three counts of conspiracy to commit robbery, two counts of first-degree kidnapping with the use of a deadly weapon, three counts of first-degree kidnapping (victim 60 years of age or older), one count of possession of controlled substance with the intent to sell, two counts of possession of stolen

property, two counts of possession of stolen property (firearm), two counts of robbery with the use of a deadly weapon, and three counts of robbery with the use of a deadly weapon (victim 60 years of age or older). ECF No. 7-1.

Lyons agreed to plead guilty to the following counts: (1) first-degree kidnapping, (2) conspiracy to commit robbery, (3) robbery with the use of a deadly weapon, (4) conspiracy to commit kidnapping, (5) robbery with the use of a deadly weapon (victim 60 years of age or older), (6) conspiracy to commit robbery, (7) burglary, and (8) possession of stolen property. ECF No. 7-2 at 2.  The parties jointly recommended a sentence for the first-degree kidnapping charge of 15 years imprisonment, with parole eligibility starting after 5 years. *Id.* at 3.  The prosecution did not oppose having the sentences for counts 1 and 2 run concurrently to each other, counts 3 and 4 running concurrently to each other, counts 5 and 6 running concurrently to each other, and 7 and 8 running concurrently to all other counts. *Id.*  However, the prosecution retained the right to ask for those three groups (counts 1 and 2, counts 3 and 4, and counts 5 and 6) to run consecutively. *Id.*

On February 13, 2015, the state district court entered a judgment of conviction that followed the guidance of the guilty plea agreement. *See* ECF No. 7-3.  The sentences were: (1) 5 to 15 years, (2) 2 to 5 years, concurrent with count 1, (3) 5 to 15 years, plus a consecutive 2 to 5 years for use of a deadly weapon, consecutive to count 1, (4) 2 to 5 years, concurrent with count 3, (5) 5 to 15 years, plus a consecutive 2 to 10 years for use of a deadly weapon, consecutive to count 4, (6) 2 to 5 years, concurrent with count 5, (7) 3 to 9 years, concurrent with count 6, and (8) 3 to 9 years, concurrent with count 7. *Id.*  The court pronounced an aggregate sentence of 19 to 60 years. *Id.*

1   Lyons appealed his judgment of conviction, and the Nevada Court of Appeals affirmed

2   on August 25, 2015. ECF No. 7-6.  On July 18, 2016, the state district court entered an amended

3   judgment of conviction removing the aggregate sentence. ECF No. 7-7.  On September 19, 2016,

4   Lyons filed a state post-conviction petition. ECF No. 7-8.  Following an evidentiary hearing, the

5   state district court denied the petition on April 4, 2017. ECF Nos. 7-11, 7-12.  Lyons appealed

6   and the Nevada Court of Appeals affirmed on June 11, 2019. ECF No. 7-15.

7   On October 10, 2019, Lyons filed a proper-person motion to amend or modify the

8   judgment of conviction. ECF No. 43-20.  The state district court denied the motion. ECF No. 42-

9   21.  Around this time, Lyons commenced this federal habeas corpus proceeding. *See* ECF No. 5.

10   I appointed the Federal Public Defender to represent him. ECF No. 4.  Lyons' federal counsel

11   filed in the state court a motion to correct an illegal sentence and a post-conviction petition

12   challenging the computation of time. ECF Nos. 43-22, 43-24.  The state district court granted

13   Lyons' motion, rescinded the amended judgment of conviction, and reinstated the original

14   judgment of conviction with the aggregate sentence. ECF No. 43-31.

15   **II.     GOVERNING STANDARD OF REVIEW**

16   The standard of review generally applicable in habeas corpus cases is set forth in the

17   Antiterrorism and Effective Death Penalty Act (AEDPA).

18   An application for a writ of habeas corpus on behalf of a person in
    custody pursuant to the judgment of a State court shall not be
19   granted with respect to any claim that was adjudicated on the merits
    in State court proceedings unless the adjudication of the claim—

20
21   (1)     resulted in a decision that was contrary to, or
            involved an unreasonable application of, clearly
            established Federal law, as determined by the
22          Supreme Court of the United States; or

23

4

1      (2)      resulted in a decision that was based on an
2               unreasonable determination of the facts in light of the
                evidence presented in the State court proceeding.

3  28 U.S.C. § 2254(d).  A state court decision is contrary to clearly established Supreme Court

4  precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that

5  contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court

6  confronts a set of facts that are materially indistinguishable from a decision of [the Supreme]

7  Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362,

8  405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  A state court decision is an

9  unreasonable application of clearly established Supreme Court precedent within the meaning of

10 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the

11 Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's

12 case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause

13 requires the state court decision to be more than incorrect or erroneous.  The state court's

14 application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*,

15 529 U.S. at 409–10) (internal citation omitted).

16      The Supreme Court has instructed that "[a] state court's determination that a claim lacks

17 merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

18 correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing

19 *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has stated "that even a

20 strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*

21 at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)

22 (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating

23

state-court rulings, which demands that state-court decisions be given the benefit of the doubt"

(simplified)).

### III.    DISCUSSION

#### A.    Ground 1—Ineffective Assistance of Trial Counsel

In ground 1 of his Petition, Lyons alleges that his trial counsel was ineffective. ECF No.

22 at 8.  In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for

analysis of claims of ineffective assistance of counsel, requiring the petitioner to demonstrate

(1) that the attorney's "representation fell below an objective standard of reasonableness," and

(2) that the attorney's deficient performance prejudiced the defendant such that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." 466 U.S. 668, 688, 694 (1984).  A court considering a claim of

ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance." *Id.* at 689.  The petitioner's burden

is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  Additionally, to establish

prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had

some conceivable effect on the outcome of the proceeding." *Id.* at 693.  Rather, the errors must

be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at

687.

When the ineffective assistance of counsel claim is based "[i]n the context of a guilty

plea, the ineffectiveness inquiry probes whether the alleged ineffective assistance impinged on

the defendant's ability to enter an intelligent, knowing and voluntary plea of guilty." *Lambert v.*

*Blodgett*, 393 F.3d 943, 979 (9th Cir. 2004).  As such, "[t]o succeed, the defendant must show

that counsel's assistance was not within the range of competence demanded of counsel in criminal cases." *Id.* at 979–80.  And regarding the prejudice prong, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.").

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104–05.  In *Richter*, the Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem review is doubly so. *Id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential.") (simplified).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

### 1. Ground 1(a)—counsel did not seek to dismiss the kidnapping charges

In ground 1(a), Lyons alleges that counsel failed to seek to have his first-degree kidnapping charges dismissed. ECF No. 22 at 8.

### a. Background

At the post-conviction evidentiary hearing, Lyons testified that he spoke with his trial counsel about the kidnapping charges. ECF No. 7-11 at 6.  According to Lyons, "[a]s soon as [his counsel] came in he briefly looked over [his] case and said we have to get these kidnappings

dropped right away because they are incidental to the robberies." *Id.*  Lyons agreed with his counsel, "telling him that . . . those [kidnapping charges were] the biggest burdens on [his] case." *Id.*  Lyons testified that "[i]f th[e] kidnapping counts had been dismissed in the pre-trial proceedings," it "would . . . have affected [his] decision to take the deal that [he] signed." *Id.* at 7–8.  Lyons explained that dismissing the kidnapping counts pre-trial "would have been a major [consideration] because [they were] five life sentences." *Id.* at 8.  But at some point Lyons "made a decision that it was okay to plead guilty [to one count of kidnapping] so long as the life tail wouldn't be imposed." *Id.* at 29.

Lyons' counsel did not testify at the post-conviction evidentiary hearing.  However, at a calendar call prior to Lyons' signing the guilty plea agreement, Lyons' counsel stated that Lyons "thinks that the kidnapping charge should be subsumed with the robbery," and counsel agreed.  ECF No. 40-15 at 3–4.  However, counsel did not "believe pretrial is the time to bring it up" because he "did bring it up as a Writ in another case, and the judge granted it, but the Supreme Court said, no, this isn't the time." *Id.*  As such, counsel informed the court in Lyons' case that he was "not going to waste the Court's time on that." *Id.*  Moreover, in Lyons' fast track appellate statement, Lyons' trial counsel, who was also his appellate counsel, stated that Lyons "entered into a Guilty Plea Agreement with the District Attorney . . . primarily due to the strong nature of the State's evidence and the fact that life imprisonment had been foregone by the District Attorney as an inducement to plead." ECF No. 7-4 at 7.

At the conclusion of Lyons' testimony at the post-conviction evidentiary hearing, the state district court stated that "had [Lyons' counsel] filed a pre-trial motion to dismiss the kidnapping charges based upon these facts, I would have denied such a motion because the case law is pretty clear that this is a decision for the jury." ECF No. 7-11 at 54.  The court also stated

that "obviously if the evidence is not produced to support [the kidnapping charges] . . . and the jury nonetheless found him guilty, then trial counsel would file a motion within seven days of the verdict and say there was no evidence to support the kidnapping and the motion would be granted." *Id.* at 57.

### b.     State court determination

In affirming the denial of Lyons' state postconviction petition, the Nevada Court of Appeals held:

> The State presented evidence to the grand jury that he and his codefendants moved the victims at gunpoint from the victims' open garages into their homes, then held the victims at gunpoint while they searched for valuables.   Lyons claimed this evidence demonstrated that the movement of the victims was necessary to complete the robberies and, therefore, was merely incidental movement.   Lyons failed to demonstrate his counsel's performance was deficient or resulting prejudice.
>
> The record reveals that Lyons' counsel discussed this issue with the trial-level court during a larger discussion concerning motions Lyons wanted counsel to pursue.   Counsel informed the court that Lyons wished for counsel to file a pretrial petition for a writ of habeas corpus arguing that the kidnapping charges were incidental to the robbery charges.   Counsel informed the trial-level court that he had explained to Lyons that, based on counsel's past experience, a pretrial petition for a writ of habeas corpus was not the best way to raise this issue and that the defense would utilize this argument at a different time.   Tactical decisions such as this "are virtually unchallengeable absent extraordinary circumstances," *Ford v. State*, 105 Nev. 850, 853, 784 P.2d 951, 953 (1989), which Lyons did not demonstrate.
>
> Lyons also failed to demonstrate a reasonable probability a pretrial petition for a writ of habeas corpus would have been successful because the record demonstrates the State presented sufficient evidence to support the grand jury's probable cause finding for the kidnapping and robbery charges. *See Sheriff, Washoe Cty. v. Hodes*, 96 Nev. 184, 186, 606 P.2d 178, (1980) (explaining that State need only present slight or marginal evidence to demonstrate probable cause to support a criminal charge); *see also Gonzales v. State*, 131 Nev. 481, 499, 354 P.3d 654, 666 (Ct. App.

2015) (concluding a kidnapping was not incidental to a robbery because moving the victim from an open garage and into the house was not necessary to complete the robbery, increased the danger to the victim, and allowed the crime to continue for a longer period of time).   Therefore, we conclude the district court did not err by denying this claim.

ECF No. 7-15 at 3–4.

### c.   Analysis

In Nevada, for a conviction for kidnapping arising from the same conduct as a robbery, "any movement or restraint must stand alone with independent significance from the act of robbery itself, create a risk of danger to the victim substantially exceeding that necessarily present in the crime of robbery, or involve movement, seizure or restraint substantially in excess of that necessary to its completion." *Mendoza v. State*, 130 P.3d 176, 181 (Nev. 2006). "[W]hether the movement of the victims was incidental to [an] associated offense . . . [is a] question[ ] of fact to be determined by the trier of fact in all but the clearest cases." *Sheriff, Clark Cty. v. Medberry*, 606 P.2d 181, 182 (Nev. 1980); *see also Langford v. State*, 600 P.2d 231, 236–37 (Nev. 1979).

The Nevada Court of Appeals reasonably determined that Lyons' counsel tactically decided not to challenge the kidnapping charges in a pre-trial writ.  Lyons' counsel stated that he had previously filed such a pre-trial writ in a different case, and the Supreme Court of Nevada held that the pre-trial writ was not the right time to make the challenge. *See* ECF No. 40-15 at 3–4.  In the case referenced by Lyons' counsel, *State v. Jernigan*, counsel "challenged the grand jury's finding of probable cause to support the kidnapping charges, arguing that the State failed to present sufficient evidence to support the indictment because it did not establish that the kidnapping was not incidental to the robbery." No. 64812, 2014 WL 1431072, at *1 (Nev. April

10

10, 2014).  The Supreme Court of Nevada reversed the district court's grant of the pre-trial writ because "[a]lthough the evidence presented to the grand jury may not be sufficient to sustain dual convictions for robbery and kidnapping, . . . we are not concerned with whether the evidence currently in the record is, by itself, sufficient to sustain such dual convictions." *Id.* Instead, the court was "solely concerned with whether the evidence presented to the grand jury establishes probable cause that the offense of kidnapping was committed . . . and that [the petitioner] committed it." *Id.*  As the facts in *Jernigan* demonstrate, Lyons' counsel made the strategic decision not to file a futile pre-trial writ to challenge the kidnapping charges. *See Harrington*, 562 U.S. at 107 (2011) ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies."); *see also Correll v. Ryan*, 539 F.3d 938, 948 (9th Cir. 2008) ("[U]nder *Strickland*, we must defer to trial counsel's strategic decisions.").

The Nevada Court of Appeals also reasonably determined that Lyons failed to demonstrate prejudice.  To demonstrate a reasonable probability that a pre-trial writ would have been successful, Lyons must demonstrate that the grand jury lacked probable cause for the kidnapping charges.  Indeed, only in the clearest of cases that kidnapping charges are incidental to robbery charges should the charges be dismissed pre-trial.  Otherwise, this factual determination should be left to the trier of fact. *Medberry*, 606 P.2d at 182; *Langford*, 600 P.2d at 236–37.  Lyons fails to meet these standards because as the Nevada Court of Appeals reasonably determined, the record demonstrates that the prosecution presented sufficient evidence to support the grand jury's probable cause finding for the kidnapping charges under Nevada law. *See Gonzales v. State*, 354 P.3d 654, 666 (Nev. Ct. App. 2015) (finding, "[u]nder the circumstances of this case, the jury could reasonably have found that [the victim's] movement [from a garage to

11

inside her residence] substantially exceeded that necessary to complete the robbery and/or substantially increased the harm to her").  Moreover, judge who presided over Lyons' state post-conviction petition was the same judge who presided over Lyons' criminal proceedings.  And, importantly, that judge stated during post-conviction proceedings that she would not have granted a pre-trial writ challenging the kidnapping charges if Lyons' counsel had filed one.  Because Lyons fails to demonstrate that a pre-trial writ challenging the kidnapping charges would have been successful, he fails to demonstrate that there is a reasonable probability that he would not have pleaded guilty but for his counsel's failure to file a pre-trial writ. *Hill*, 474 U.S. at 59.

Accordingly, the Nevada Court of Appeals' determination that Lyons failed to demonstrate deficient performance or prejudice constitutes an objectively reasonable application of federal law under *Strickland* and was not based on an unreasonable determination of the facts.  Lyons is not entitled to federal habeas relief for ground 1(a).

### 2.    Ground 1(b)—did not ask for a continuance

In ground 1(b), Lyons alleges that counsel failed to ask for a continuance at the final calendar call. ECF No. 22 at 10.

### a.    Background

At the calendar call on December 1, 2014, Lyons' trial counsel informed the court that Lyons wanted a continuance because had had not seen all the discovery. ECF No. 40-15 at 3, 6.  Counsel stated that he could be ready for trial the following week but would be amenable to continuing the trial. *Id.* at 4.  However, counsel acknowledged that the prosecution was not going to agree to a continuance because some of the victims were elderly. *Id.*  Lyons then addressed the court: "It's like impossible to go to trial right now.  I don't even have all of my witness

statements, I don't have all of my discovery.  I've been here almost two years.  I'm just now getting some of my discovery." *Id.* at 6.  The court denied a continuance, finding that counsel was ready to go to trial. *Id.* at 8.  Two days later, on December 3, 2014, Lyons pleaded guilty. ECF No. 40-18.

At the post-conviction evidentiary hearing, Lyons testified that counsel came to visit him in the county jail about a month before the December 1, 2014 calendar call and informed him "that he wouldn't let the case go to trial and that he would file a continuance." ECF No. 7-11 at 8.  Lyons testified that his counsel made these statements after agreeing with Lyons that the case was not ready for trial because there was no plan yet established for the trial. *Id.* at 9.  On the day of the calendar call, while waiting for their case to be called, counsel spoke with Lyons briefly. *Id.* at 9–10.  Counsel gave Lyons "the six pack line up that [he] had been asking for," and when Lyons told counsel to make sure he told the judge that they were not ready for trial, counsel said "okay." *Id.* at 10.  Lyons testified that after the judge denied the continuance, he felt "rushed" and "scared." *Id.* at 13.  Lyons also testified that he felt "as though trial was no longer an option" because he and counsel "hadn't discussed a strategy or testimony or witnesses or anything like that." *Id.* at 14.  Counsel presented Lyons with a plea offer the next day. *Id.* at 6.

In denying Lyons' post-conviction petition, the state district judge, who also presided over Lyons' criminal case, stated that "it would not have granted a request for a continuance given that the State had invoked its right to a speedy trial back in May of 2013," "three continuances had already put the trial date out to December of 2014," and Lyons' counsel "unequivocal[ly] assert[ed] that the defense was ready for the trial." ECF No. 42-6 at 10.

/ / / /

/ / / /

13

1                     **b.**        **State court determination**

2         In affirming the denial of Lyons' state post-conviction petition, the Nevada Court of

3 Appeals held:

4                 First, Lyons argued his counsel was ineffective for failing to
support his request for a continuance of the trial.  Lyons failed to

5 demonstrate his counsel's performance was deficient or resulting
prejudice.  At a hearing one week before trial was scheduled to

6 begin, Lyons personally asked the trial court to continue the trial
because he had not reviewed all of the discovery and needed further

7 opportunities to discuss the case with counsel.  However, counsel
stated a continuance was not necessary because he was ready for the

8 trial to proceed as scheduled and indicated he would be able to have
a discussion with Lyons to alleviate Lyons' concerns.  Subsequent

9 to this hearing, Lyons accepted a plea offer from the State and
entered his guilty plea.  Given counsel's statements, Lyons failed to

10 demonstrate his counsel's actions fell below an objectively
reasonable standard.  Lyons failed to demonstrate a reasonable

11 probability he would have refused to plead guilty and would have
insisted on proceeding to trial had counsel supported Lyons' request

12 for a continuance of the trial date.  Therefore, we conclude the
district court did not err by denying this claim.

13

14 ECF No. 7-15 at 3.

15                     **c.**        **Analysis**

16         Nev. Rev. Stat. § 174.511(1) provides that "[t]he court may postpone the trial if . . . [i]t

17 finds that more time is needed by the defendant to prepare a defense."  However, as the Nevada

18 Court of Appeals reasonably determined, Lyons fails to demonstrate that his counsel was

19 deficient for not asking for a continuance because counsel stated at the calendar call that he

20 "[a]bsolutely" could be ready for trial the following week. ECF No. 40-15 at 4.

21         Further, the Nevada Court of Appeals reasonably determined that Lyons failed to

22 demonstrate prejudice.  Although counsel did not ask for a continuance—only indicating that

23 Lyons wanted a continuance and counsel was amenable to one—the trial judge refused to grant

the request.  Lyons fails to demonstrate that a different result would have occurred if counsel had

requested the continuance outright, especially given the judge's reasons for denying the

continuance: the prosecution had invoked its right to a speedy trial, the trial had already been

continued for a year and a half, and counsel stated he could be ready.  Because Lyons fails to

demonstrate that a continuance would have been successful if his counsel had requested one, he

fails to demonstrate that there is a reasonable probability that he would not have pleaded guilty

but for his counsel's failure to request a continuance. *Hill*, 474 U.S. at 59.

Consequently, the Nevada Court of Appeals' determination that Lyons failed to

demonstrate deficient performance or prejudice is an objectively reasonable application of

federal law under *Strickland* and was not based on an unreasonable determination of the facts.

Lyons is not entitled to federal habeas relief for ground 1(b).

### 3.    Ground 1(c)—mischaracterized his sentence

In ground 1(c), Lyons alleges that counsel mischaracterized the sentence he would

receive if he pleaded guilty by promising he would receive only 5-to-15 years in prison. ECF No.

22 at 13.

### a.    Background

Lyons' plea agreement provided that the parties jointly recommended a sentence for first-

degree kidnapping of 15 years imprisonment, with parole eligibility starting after 5 years. ECF

No. 7-2 at 3.  The prosecution did not oppose having the sentences for counts 1 and 2 run

concurrently to each other, counts 3 and 4 run concurrently to each other, counts 5 and 6 run

concurrently to each other, and 7 and 8 run concurrently to all other counts. *Id.*  However,

importantly, the prosecution retained the right to ask for those three groups—counts 1 and 2,

counts 3 and 4, and counts 5 and 6—to run consecutively. *Id.*  The guilty plea agreement also

provided that (1) Lyons understood that "the sentencing judge has the discretion to order the sentences served concurrently or consecutively," (2) Lyons "ha[d] not been promised or guaranteed any particular sentence by anyone," and (3) Lyons' counsel "answered all [his] questions regarding th[e] guilty plea agreement and its consequences." *Id.* at 6, 9.

At Lyons' change of plea hearing, the prosecutor stated, in pertinent part, there was "no opposition to counts 1 and 2 regarding Alan Adams running concurrent to each other. Counts 3 and 4 regarding the Talleys running concurrent to each other. Counts 5 and 6 regarding the Johnsons running concurrent to each other. And counts 7 and 8 running concurrent to all counts." ECF No. 40-18 at 3. However, the prosecutor stated that it "retain[ed] the right to argue for consecutive time between the event involving Alan Adams, the Talleys and the Johnsons." *Id.* The judge asked Lyons if that was his understanding of the agreement, and Lyons responded yes. *Id.* at 4. The judge then canvassed Lyons about the agreement, and Lyons answered affirmatively when asked if he read the guilty plea agreement and if he had the opportunity to go over the agreement with counsel before signing it. *Id.* at 4–5. Although the judge ran Lyons' sentences for counts 1 and 2 concurrently, counts 3 and 4 concurrently, and counts 5 and 6 concurrently, it ran those three groups of counts consecutive to each other. *See* ECF No. 7-3.

Following his sentencing, Lyons moved to dismiss his counsel because he "mislead [Lyons] to believe [he] was being sentenced to one 5 – 15 year prison term." ECF No. 41-5 at 3. Similarly, at the post-conviction evidentiary hearing, Lyons testified that he was led to believe that he would receive a 5-to-15-year sentence as a result of his plea agreement. ECF No. 7-11 at 14. Lyons testified that counsel said that the kidnapping would be "cap[ped]" at 15 years "and everything else would get ran together." *Id.* at 14. Lyons testified that he did not read the plea agreement, which he only saw briefly on the day of the plea hearing; instead, he trusted counsel's

1   representations about what was contained within the agreement. *Id.* at 28–30, 40.  Lyons testified

2   that he would not have signed the plea agreement if he had known that the three groups of counts

3   could be ran consecutively. *Id.* at 16.

### b.    State court determination

5       In affirming the denial of Lyons' state postconviction petition, the Nevada Court of

6   Appeals held:

> Lyons failed to demonstrate his counsel's performance was deficient
> or resulting prejudice.  In the written plea agreement, Lyons
> acknowledged he had not been promised or guaranteed any
> particular sentence.  In addition, Lyons acknowledged in the written
> plea agreement counsel had explained the potential consequences he
> faced by entry of his guilty plea and that the district court had the
> discretion to impose the appropriate sentence.   Under these
> circumstances, Lyons failed to demonstrate his counsel acted in an
> objectively unreasonable manner or a reasonable probability he
> would have refused to plead guilty and insisted on proceeding to
> trial had counsel explained the guilty plea and possible sentences in
> a different manner.  Therefore, we conclude the district court did not
> err by denying this claim.

14   ECF No. 7-15 at 5.

### c.    Analysis

16       Trial counsel is "required to give the defendant the tools he needs to make an intelligent

17   decision" regarding pleading guilty. *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002); *see*

18   *also Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) ("counsel have a duty to supply criminal

19   defendants with necessary and accurate information" regarding their guilty pleas).  "Though a

20   mere inaccurate prediction, standing alone, would not constitute ineffective assistance, the gross

21   mischaracterization of the likely outcome [of a guilty plea], combined with the erroneous advice

22   on the possible effects of going to trial, falls below the level of competence required of defense

23   attorneys." *Iaea*, 800 F.2d at 865 (internal citation omitted).

Lyons has not shown that his counsel failed to give him the tools he needed to make an intelligent decision about pleading guilty or that his counsel grossly mischaracterized the outcome of his guilty plea.  As the Nevada Court of Appeals reasonably noted, Lyons' plea agreement provided that Lyons had not been promised any particular sentence, his counsel explained the potential consequences he faced by pleading guilty, the judge had discretion in sentencing him, and the prosecution had the ability to argue for consecutive sentences among the three groups of charges.  As such, Lyons' claim that his counsel represented that he would only be facing a 5-to-15-year sentence on the kidnapping charges with the remaining charges all running concurrent rests entirely on Lyons' self-serving statements made after he was already sentenced. *See, e.g., Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting an ineffective-assistance-of-trial-counsel claim, in part, because "[o]ther than [the petitioner]'s own self-serving statement, there [was] no evidence that his attorney failed to discuss potential defenses with him"); *Turner*, 281 F.3d at 881 (explaining that the petitioner's "self-serving statement, made years later, that [his trial counsel] told him that 'this was not a death penalty case' is insufficient to establish that [the petitioner] was unaware of the potential of a death verdict").  Accordingly, the Nevada Court of Appeals' determination that Lyons failed to demonstrate that his counsel acted deficiently constitutes an objectively reasonable application of federal law under *Strickland* and was not based on an unreasonable determination of the facts. Lyons is not entitled to federal habeas relief for ground 1(c).

### 4.    Ground 1(d)—did not object to sentence enhancement

In ground 1(d), Lyons alleges that counsel failed to object to the imposition of a sentencing enhancement without separate findings by the court. ECF No. 22 at 14.

/ / / /

### a.      Background

At Lyons' sentencing hearing, before announcing the sentence, the judge made the

following comments:

> Mr. Lyons, I have to agree that your self-image that you're
> not a bad guy, I don't know what it would take in your mind to be a
> bad guy, but this, this is shocking, this behavior.
>
> I mean this – as the prosecutor said this is people's worse
> (sic) nightmare; that they can't be safe in their own homes; that
> they're confronted when they come by gunmen.  It's people – people
> have nightmares about this.  And for these people, this came true.
> And they suffer with it 'til this day.  This apparently never crossed
> your mind when you were doing this.  And I'm just – it's sickening.

ECF No. 40-20 at 28.

During the evidentiary hearing, the state district court stated: "I can state on the record at

this time I always consider all of [enhancement] factors." ECF No. 7-11 at 65.  The judge

explained: "I did consider those and . . . did in fact take into account everything that was

presented in the PSI and the mitigating factors that were discussed by the attorneys at

sentencing." *Id.* at 65–66.  Following argument by Lyons' counsel, the judge reiterated: "I did

consider all of the factors.  I always do that and . . . spend a lot of time on my sentencings." *Id.* at

66–67.  The judge explained that she considered "the circumstances and nature of the crime,"

Lyons' prior criminal record, Lyons' age, "all of the mitigating circumstances that were argued

by counsel at the time of sentencing," and "[a]ll the materials that were provided." *Id.* at 67.

### b.      State court determination

In affirming the denial of Lyons' state postconviction petition, the Nevada Court of

Appeals held:

> Fourth, Lyons argued his counsel was ineffective for failing
> to object when the sentencing court did not discuss the statutory

factors supporting its sentencing decisions for the deadly weapon and victim over 60 enhancements. Lyons failed to demonstrate resulting prejudice. The record reveals the sentencing court failed to state, on the record, that it had considered the factors enumerated in NRS 193.165(1) and in NRS 193.167(3) prior to imposing the sentences for the deadly weapon and victim over 60 enhancements. *See Mendoza-Lobos v. State*, 125 Nev. 634, 643, 218 P.3d 501, 507 (2009). Notwithstanding the sentencing court's failure to make findings regarding the enhancements, the parties discussed the information contained within those factors and the record provides sufficient support for the sentence imposed. Given the record before this court, we conclude Lyons failed to demonstrate a reasonable probability of a different outcome had counsel objected when the sentencing court failed to discuss on the record the factors supporting the enhancement penalties when it imposed sentence. *See id.* at 644, 218 P.3d at 507 (holding there was no plain error when the district court's failure to make findings did not affect the sentencing decision). Therefore, we conclude the district court did not err by denying this claim.

ECF No. 7-15 at 5–6.

### c.   Analysis

Nevada law requires a sentencing judge to consider the following factors when sentencing for a deadly weapon enhancement: "(a) [t]he facts and circumstances of the crime; (b) [t]he criminal history of the person; (c) [t]he impact of the crime on any victim; (d) [a]ny mitigating factors presented by the person; and (e) [a]ny other relevant information." Nev. Rev. Stat. § 193.165(1). "The court shall state on the record that it has considered the information described in paragraphs (a) to (e), inclusive, in determining the length of the additional penalty imposed." *Id.* And the Supreme Court of Nevada has "direct[ed] the district courts to make findings regarding each factor enumerated in NRS 193.165(1) . . . when imposing a sentence for a deadly weapon enhancement." *Mendoza-Lobos*, 218 P.3d at 506.

Lyons is correct that the sentencing judge did not strictly abide by the requirements of Nev. Rev. Stat. § 193.165(1). It thus may have been prudent for his counsel to have objected.

But as the Nevada Court of Appeals reasonably determined, Lyons fails to demonstrate

prejudice. *Strickland*, 466 U.S. at 694.  Lyons' contention that there is a reasonable probability

that the judge would have imposed a lesser sentence had his counsel objected to the judge's

failure to state on the record its consideration of the § 193.165(1) factors is mere speculation.

This is especially true given (1) the judge explained at the sentencing hearing that she was

sentencing Lyons harshly due to his crimes being shocking and sickening and (2) she explained

at the post-conviction evidentiary hearing that she had considered the factors prior to imposing

sentence. *See Djerf v. Ryan*, 931 F.3d 870, 881 (9th Cir. 2019) ("*Strickland* prejudice is not

established by mere speculation.").  The Nevada Court of Appeals' determination that Lyons

failed to demonstrate prejudice constitutes an objectively reasonable application of federal law

under *Strickland* and was not based on an unreasonable determination of the facts.  Lyons is not

entitled to federal habeas relief for ground 1(d).

### 5.    Ground 1(e)—cumulative trial counsel error

In ground 1(e), Lyons alleges that the cumulative effect of trial counsel's performance

prejudiced him. ECF No. 22 at 16.  In affirming the denial of Lyons' state postconviction

petition, the Nevada Court of Appeals held:

> Lyons failed to demonstrate any errors, even if considered
> cumulatively, amounted to a reasonable probability of altering the
> outcome of Lyons' criminal proceedings or required withdrawal of
> his plea to correct a manifest injustice, *see* NRS 176.165.  Therefore,
> we conclude the district court did not err by denying this claim.

ECF No. 7-15 at 7.

Cumulative error applies where, "although no single trial error examined in isolation is

sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still

prejudice a defendant." *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996); *see also*

21

1  *Parle v. Runnels*, 387 F.3d 1030, 1045 (9th Cir. 2004) (explaining that the court must assess

2  whether the aggregated errors "'so infected the trial with unfairness as to make the resulting

3  conviction a denial of due process'" (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643

4  (1974)).  I have not identified any errors by Lyons' counsel, so there are no errors to accumulate.

5  Lyons is not entitled to federal habeas relief for ground 1(e).

6  **B.    Ground 2—Sentence is Cruel and Unusual Punishment**

7        In ground 2, Lyons alleges that his sentence violates the Eighth and Fourteenth

8  Amendments' protections against cruel and unusual punishment. ECF No. 22 at 18.

9        **1.    State court determination**

10       In affirming Lyons' judgment of conviction, the Nevada Court of Appeals held:

11             We have consistently afforded the district court wide
         discretion in its sentencing decision. *See, e.g., Houk v. State*, 103
12        Nev. 659, 664, 747 P.2d 1376, 1379 (1987).  We will refrain from
         interfering with the sentence imposed by the district court "[s]o long
13        as the record does not demonstrate prejudice resulting from
         consideration of information or accusations founded on facts
14        supported only by impalpable or highly suspect evidence." *Silks v.
         State*, 92 Nev. 91, 94, 545 P.2d 1159, 1161 (1976).  Regardless of
15        its severity, a sentence that is within the statutory limits is not "'cruel
         and unusual punishment unless the statute fixing punishment is
16        unconstitutional or the sentence is so unreasonably disproportionate
         to the offense as to shock the conscience.'" *Blume v. State*, 112 Nev.
17        472, 475, 915 P.2d 282, 284 (1996) (quoting *Culverson v. State*, 95
         Nev. 433, 435, 596 P.2d 220, 221-22 (1979)); *see also Harmelin v.*
18        *Michigan*, 501 U.S. 957, 1000-01 (1991) (plurality opinion)
         (explaining the Eighth Amendment does not require strict
19        proportionality between crime and sentence; it forbids only an
         extreme sentence that is grossly disproportionate to the crime).
20
              Here, Lyons engaged in three armed robberies in which
21        several of the victims were 60 years of age or older.  Lyons also
         pawned some of the valuables that were taken during the robberies.
22        The sentence imposed is within the parameters provided by the
         relevant statutes. *See* NRS 193.165; NRS 199.480(l)(a); NRS
23        200.320(2)(b); NRS 200.380(2); NRS 205.060(2); NRS
         205.275(2)(c).   Lyons does not allege that those statutes are

1    unconstitutional.  Lyons also does not allege that the district court
2    relied on impalpable or highly suspect evidence.  Having considered
     the sentence and the crime, we conclude the sentence imposed is not
3    so grossly disproportionate to the crime as to constitute cruel and
     unusual punishment.

4  ECF No. 7-6 at 2–3.

5          **2.     Analysis**

6          The Eight Amendment provides that "cruel and unusual punishments [shall not be]

7  inflicted." U.S. Const. amend. VIII.  "[B]arbaric punishments" and "sentences that are

8  disproportionate to the crime" are cruel and unusual punishments. *Solem v. Helm*, 463 U.S. 277,

9  284 (1983) (concluding that a habitual offender's sentence of life without the possibility of

10 parole for a seventh nonviolent felony is disproportionate).  But the Eighth Amendment does not

11 mandate strict proportionality between the sentence and the crime. *See Ewing v. California*, 538

12 U.S. 11, 23 (2003).  Rather, "only extreme sentences that are 'grossly disproportionate' to the

13 crime" are forbidden. *Harmelin*, 501 U.S. at 1001.  "In assessing the compliance of a non-capital

14 sentence with the proportionality principle, [this Court] consider[s] 'objective factors'" such as

15 "the severity of the penalty imposed and the gravity of the offense." *Taylor v. Lewis*, 460 F.3d

16 1093, 1098 (9th Cir. 2006); *see also Helm*, 463 U.S. at 292 (explaining that the court weighs the

17 criminal offense and penalty "in light of the harm caused or threatened to the victim or to

18 society, and the culpability of the offender").  "[S]uccessful challenges based on proportionality

19 are 'exceedingly rare,' and deference is due legislative judgments on such matters." *Id.* (citing

20 *Solem*, 463 U.S. at 289-90).

21         Lyons pleaded guilty to first-degree kidnapping, two counts of conspiracy to commit

22 robbery, robbery with the use of a deadly weapon, conspiracy to commit kidnapping, robbery

23 with the use of a deadly weapon (victim 60 years of age or older), burglary, and possession of

stolen property. ECF No. 7-3.  The possible sentences for those crimes, under the statutes in place at the time of Lyons' sentencing, were as follows:

(1) for first-degree kidnapping the possible sentences are life with the possibility of parole after 5 years or a definite term of 5-to-15 years under Nev. Rev. Stat. § 200.320(2);

(2) for conspiracy to commit robbery the possible sentence is 1-to-6 years under Nev. Rev. Stat. § 199.480(1)(a);

(3) for robbery with the use of a deadly weapon the possible sentence is 2-to-15 years under Nev. Rev. Stat. § 200.380(2) plus 1-to-20 years under Nev. Rev. Stat. § 193.165(1);

(4) for conspiracy to commit kidnaping the sentence is 1-to-6 years under Nev. Rev. Stat. § 199.480(1)(a);

(5) for robbery with the use of a deadly weapon of a victim 60 years of age or older the possible sentence is 2-to- 15 years under Nev. Rev. Stat. § 200.380(2) plus 1-to-20 years under Nev. Rev. Stat. § 193.165(1);

(6) for burglary the possible sentence is 1-to-10 years under Nev. Rev. Stat. § 205.060(2)(d); and

(7) for possession of stolen property the possible sentence is 1-to-10 years under Nev. Rev. Stat. § 205.275(2)(c).

Lyons' sentences did not exceed any of these statutory limits. *See* ECF No. 7-3.  Thus, his burden of demonstrating an Eighth Amendment violation is very difficult to meet. *See United States v. Parker*, 241 F.3d 1114, 1117 (9th Cir. 2001) ("Generally, as long as the sentence imposed on a defendant does not exceed statutory limits, this court will not overturn it on Eighth Amendment grounds.").

1      Lyons' contention centers on the judge running some of his sentences consecutively.

2  Lyons entered three residential houses, pointed guns at the occupants of the three houses, ordered

3  the occupants to lay on the ground, ransacked the three houses, and stole property.  Rather than

4  running these three incidents concurrently as Lyons advocated should have been done, the judge

5  ordered the sentences for the three incidents to run consecutively—counts 1 and 2 regarding

6  Adams, counts 3 and 4 regarding the Talleys, and counts 5 and 6 regarding the Johnsons.  As the

7  Nevada Court of Appeals reasonably concluded, this did not make Lyons' sentence "'grossly

8  disproportionate' to the crime[s]." *Harmelin*, 501 U.S. at 1001.  Therefore, the Nevada Court of

9  Appeals' conclusion that Lyons' sentence did not violate the proscription against cruel and

10  unusual punishment constitutes an objectively reasonable application of federal law and was not

11  based on an unreasonable determination of the facts.  Lyons is not entitled to federal habeas

12  relief for ground 2.

13      **C.      Ground 3—Guilty plea was not knowing, intelligent, and voluntary**

14      In ground 3, Lyons alleges that his guilty plea was not knowing, intelligent, and

15  voluntary, in violation of his due process rights under the Fourteenth Amendment, because

16  (1) the unfounded presence of the kidnapping charges, which should have been subsumed into

17  the robbery charges, made his risk at trial much more severe, (2) he accepted the plea deal a day

18  after a continuance was denied, and (3) he was incorrectly informed that he would only be

19  sentenced to 5-to-15 years imprisonment if he pleaded guilty. ECF No. 22 at 20–22.

20      Although Lyons raised this claim in his opening brief on appeal from his post-conviction

21  proceedings, the Nevada Court of Appeals did not address it. *See* ECF Nos. 7-13 at 34–36; 7-15.

22  However, I presume that the Nevada Court of Appeals denied this claim on the merits. *See*

23  *Johnson v. Williams*, 568 U.S. 289, 293 (2013) ("[W]hen a state court issues an order that

25

1   summarily rejects without discussion *all* the claims raised by a defendant, including a federal

2   claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas

3   court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits."

4   (emphasis in original)).  Lyons fails to adequately rebut this strong presumption. *See Richter*,

5   562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has

6   denied relief, it may be presumed that the state court adjudicated the claim on the merits *in the*

7   *absence of any indication or state-law procedural principles to the contrary*." (emphasis added)).

8   Lacking a reasoned state-court decision, I "must determine what arguments or theories supported

9   or . . . could have supported, the state court's decision." *Richter*, 562 U.S. at 102; *Carter v.*

10  *Davis*, 946 F.3d 489, 502 (9th Cir. 2019).[3]

11      The federal constitutional guarantee of due process of law requires that a guilty plea be

12  knowing, intelligent, and voluntary. *See Brady v. United States*, 397 U.S. 742, 748 (1970);

13  *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).  "The voluntariness of [a petitioner's] plea can be

14  determined only by considering all of the relevant circumstances surrounding it." *Brady*, 397

15  U.S. at 749.  Addressing the "standard as to the voluntariness of guilty pleas," the Supreme Court

16  has stated that a "plea of guilty entered by one fully aware of the direct consequences . . . must

17  stand unless induced by threats . . . , misrepresentation (including unfulfilled or unfulfillable

18  promises), or perhaps by promises that are by their nature improper as having no proper

19  relationship to the prosecutor's business." *Id.* at 755; *see also North Carolina v. Alford*, 400 U.S.

20  25, 31 (1970) (noting that the longstanding "test for determining the validity of guilty pleas" is

21  "whether the plea represents a voluntary and intelligent choice among the alternative courses of

22

23      [3] Even if I reviewed ground 3 *de novo* because it appears to be the only claim not addressed by the Nevada Court of Appeals, Lyons still fails to demonstrate an entitlement to relief, as discussed below.

26

action open to the defendant").  Although a plea may not be produced "by mental coercion overbearing the will of the defendant," a guilty plea made following "the post-indictment accumulation of evidence [that] convince[s] the defendant and his counsel that a trial is not worth the agony and expense to the defendant and his family" is not "improperly compelled." *Brady*, 397 U.S. at 750 (reasoning that "mental coercion" is only found if the defendant "did not or could not, with the help of counsel, rationally weigh the advantages of going to trial against the advantages of pleading guilty").

During his plea canvass, Lyons' answers to the judge's questions provided that (1) the prosecutor's recitation of the plea agreement reflected his understanding of the agreement, (2) he read the plea agreement, (3) he signed the plea agreement, (4) he understood the charges and possible sentences to which he was pleading guilty, (5) no one forced or coerced him into pleading guilty, (6) no one made any promises to induce him to plead guilty other than what was contained in the plea agreement, and (7) he understood sentencing was up to the court. ECF No. 4-18 at 4–15.  The judge found that Lyons understood "the nature and consequences of his plea" and that it was "freely and voluntarily made." *Id.* at 15.  Lyons' representations and the judge's findings "carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012) ("Petitioner's statements at the plea colloquy carry a strong presumption of truth.").

Further, as was discussed in ground 1(a), the kidnapping charges *may* have been incidental in the robbery charges, but that was an argument to be made at a different time.  And any risk that Lyons' convictions could have been more severe if he went to trial does not render his plea invalid. *See Brady*, 397 U.S. at 750 (explaining that a guilty plea is not rendered invalid

27

1   when it has been "motivated by the defendant's desire to accept the certainty or probability of a

2   lesser penalty rather than face a wider range of possibilities extending from acquittal to

3   conviction and a higher penalty authorized by law for the crime charged").  And although Lyons

4   accepted the plea deal a day after the continuance was denied, his counsel stated at the calendar

5   call that he was ready to go to trial.  As such, Lyons' allegations that he felt rushed and coerced

6   to plead guilty to avoid going to trial unprepared are unavailing.  Finally, as was discussed in

7   ground 1(c), Lyons' argument that that he was incorrectly informed about his possible sentence

8   is belied by the record.  The plea agreement provided that Lyons had not been promised any

9   particular sentence, his counsel explained the potential consequences he faced by pleading guilty,

10   the judge had discretion in sentencing him, and the prosecution had the ability to argue for

11   consecutive sentences between the three groups of charges.

12          Bn the record and "considering all of the relevant circumstances surrounding" Lyons'

13   plea, Lyons fails to demonstrate that his guilty plea was not entered into knowingly, intelligently,

14   and voluntarily. *Brady*, 397 U.S. at 748-49.  Consequently, the Nevada Court of Appeals'

15   implicit denial of this ground constituted an objectively reasonable application of federal law.

16   Lyons is not entitled to federal habeas relief for ground 3.

17          **D.      Ground 4—Ineffective Assistance of Appellate Counsel**

18          In ground 4, Lyons alleges that he was deprived of his right to effective assistance of

19   appellate counsel under the Sixth and Fourteenth Amendments by his appellate counsel's failure

20   to raise the claim that the judge imposed sentence without making findings under Nev. Rev. Stat.

21   § 193.165(1). ECF No. 22 at 22.

22          The *Strickland* standard stated previously is also utilized to review appellate counsel's

23   actions: a petitioner must show "that [appellate] counsel unreasonably failed to discover

nonfrivolous issues and to file a merits brief raising them" and "that, but for his [appellate] counsel's unreasonable failure to file a merits brief, [petitioner] would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

### 1.    State court determination

In affirming the denial of Lyons' state postconviction petition, the Nevada Court of Appeals held:

> Appellate counsel is not required to raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Rather, appellate counsel will be most effective when every conceivable issue is not raised on appeal. *Ford*, 105 Nev. at 853, 784 P.2d at 953.
>
> First, Lyons claimed his appellate counsel was ineffective for failing to assert the sentencing court erred by not discussing the statutory factors supporting its sentencing decisions for the deadly weapon and elderly victim enhancements.   Lyons failed to demonstrate resulting prejudice.  As previously discussed, the parties discussed the information contained within the factors and the record provides sufficient support for the sentence imposed. Given the record before this court, Lyons failed to demonstrate a reasonable likelihood of success had counsel raised this claim on direct appeal.  Therefore, we conclude the district court did not err by denying this claim.

ECF No. 7-15 at 6.

### 2.    Analysis

As was discussed in ground 1(d) above, the sentencing judge did not strictly abide by the requirements of Nev. Rev. Stat. § 193.165(1).  It thus may have been prudent for his appellate counsel to have raised this issue in Lyons' direct appeal.  But as the Nevada Court of Appeals reasonably determined, Lyons fails to demonstrate prejudice. *Strickland*, 466 U.S. at 694; *Smith*, 528 U.S. at 285.  Importantly, Lyons fails to demonstrate that he would have prevailed on appeal with this issue because a Nevada appellate court rejected it during post-conviction proceedings.

1    Further, under Nevada law, the failure to strictly abide by the requirements of § 193.165(1) does

2    not amount to an automatic granting of relief. *See Mendoza-Lobos*, 218 P.3d at 508 (concluding

3    that a court's failure to comply with the directives of § 193.165(1) did not warrant the granting of

4    relief if the "omission did not cause any prejudice or a miscarriage of justice"); *see also Jones v.*

5    *Smith,* 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (no prejudice when appellate counsel fails to

6    raise an issue on direct appeal that is not grounds for reversal).  And as the Nevada Court of

7    Appeals reasonably determined, the parties discussed the information contained within the

8    factors and the record provides sufficient support for the sentence imposed.  Lyons would not

9    have been able to show on appeal that the judge's omission caused any prejudice or a

10   miscarriage of justice.  Accordingly, the Nevada Court of Appeals' determination that Lyons

11   failed to demonstrate prejudice constitutes an objectively reasonable application of federal law

12   under *Strickland* and *Smith* and was not based on an unreasonable determination of the facts.

13   Lyons is not entitled to federal habeas relief for ground 4.

14       **IV.    CERTIFICATE OF APPEALABILITY**

15       This is a final order adverse to Lyons.  Rule 11 of the Rules Governing Section 2254

16   Cases requires me to issue or deny a certificate of appealability (COA).  I have evaluated the

17   claims within the petition for suitability of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*,

18   281 F.3d 851, 864–65 (9th Cir. 2002).  A COA may issue only when the petitioner "has made a

19   substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  With respect

20   to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find

21   the district court's assessment of the constitutional claims debatable or wrong." *Slack v.*

22

23

1   *McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4

2   (1983)).  Applying these standards, a certificate of appealability is unwarranted.[4]

3   **V.     CONCLUSION**

4          I THEREFORE ORDER that the second amended petition for a writ of habeas corpus

5   under 28 U.S.C. § 2254 (**ECF No. 22) is denied**.

6          I FURTHER ORDER that a certificate of appealability is denied.

7          I FURTHER ORDER the Clerk of Court to substitute Calvin Johnson for Respondent

8   Warden Brian Williams, enter judgment accordingly, and close this case.

9          Dated: October 5, 2022.

10                                                        _____

11                                                        ANDREW P. GORDON
                                                          UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21          [4] Lyons requests that I conduct an evidentiary hearing. ECF No. 22 at 24.  But he fails to
     explain what evidence would be presented at an evidentiary hearing.  Neither further factual
22   development nor any evidence that may be proffered at an evidentiary hearing would affect my
     reasons for denying relief. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record
23   refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is
     not required to hold an evidentiary hearing."); *see also* 28 U.S.C. § 2254(e)(2).  I thus deny
     Lyons' request for an evidentiary hearing.